IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

**FILED**

July 10, 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ ad _____
DEPUTY

RAYMOND E. LUMSDEN,

    Plaintiff.

vs.

BRYAN COLLIER, Director TDCJ
Institutions Division;
DIRECTOR HAZELWOOD, Religious
Programming Division;
WARDEN A. MARTINEZ, Hughes Unit
Warden; MAJOR HENRY, Hughes
Unit Food Service Manager;
BRUCE ARMSTRONG, Former Warden
of the Hughes Unit;
CAPTAIN SHUMAKER, Hughes Unit
Laundry; sued in their individual
and official capacities,

    Defendants.

Case No. 6:23cv491

CIVIL RIGHTS COMPLAINT [§1983]
VERIFIED

Trial by Jury Demanded

COMES NOW, RAYMOND E. LUMSDEN #2109472, plaintiff pro se, and presents the following mixed civil-rights complaint and claims for compensatory, declaratory, and injunctive relief as follows:

## III.   JURISDICTION AND VENUE

1.   Jurisdiction is asserted pursuant to the United States Constitution and 42 U.S.C. § 1983, to redress the deprivation of those rights secured by the United States Constitution, deprived by persons acting under the color of state law. The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 1331, 1343(a)(3).

2.    Plaintiff's claims for injunctive relief is authorized pursuant to 28 U.S.C. §§ 2283, 2284.

3.    The United States District Court for the District of West Texas, Waco Division, is the appropriate venue for trial pursuant to 28 U.S.C. § 1391(b)(2); this is the district in which the events and violation's occurred, as well as where the Plaintiff resides.


## II.   INTRODUCTION

4.    This action places before this Court a lawsuit involving the defendants of the Texas Department of Criminal Justice, and the Hughes Unit located in Coryell County, Texas (Hughes Unit is a prison located at 3201 FM 929, Gatesville, Texas, 76597 and houses approx, 3,000 inmates. It also designated by TDCJ as a Native American Assigned Unit for the practice and observance of Native American Faith, 1 of only 5 prison's with this designation out of TDCJ's more than 90 prison's. It is the most Northern located Native American Unit in TDCJ, as well as a medical unit necessary to treat plaintiff's medical needs while allowing observation of his faith).

5.    The complaint alleges a violation of plaintiff's First Amendment Rights/RLUIPA related to his religious observances, practices, and equal treatment of religion, cruel and unusual treatment related to denial of and refusal to accomodate plaintiff's medical needs, insufficient and adequate food causing plaintiff to suffer negative medical affects and weight loss/gains related to his medically prescribed diet plan, unconstitutional lack of staff that places plaintiff and society in danger of health and life, exposure to health and life threatening excessive heat conditions,

illegal denial of, confiscation of, and destruction of plaintiff's property, denial of plaintiff's First Amendment Rights in denying and refusing correspondence and refusing a right to appeal that denial, disparate treatment of equally situated inmates related to faith preferences and housing location, deliberate indifference to all claims.

### III.  PARTIES

#### Plaintiff:

6.   RAYMOND E. LUMSDEN #2109472 ("Plaintiff") is presently under sentence and in the custody of the Texas Department of Criminal Justice. At all times relevant to this action, Plaintiff was then housed at the Hughes Unit, where he currently still resides.

#### Defendants

7. Defendant Bryan Collier ("Director Collier") at all times relevant to this action was/is the Director of TDCJ - Institutions Division (CID) and also a member of the Board of Director's of TDCJ. He is charged with the custody of and care of Plaintiff, as well as all 160,000 approximate inmates in TDCJ. Director Collier is the highest authority named in this lawsuit, and has the ability to address and eliminate the claims herein after being notified of their existence, as well as supervision of the defendant's named herein. He is also responsible for the rules, custom's, and actions of all defendant's as written, posted, as well as supervision and enforcement of those rules. His policies are failed and violate the Constitution because of those failures and disobediences.

8.   Defendant Hazelwood ("Director Hazelwood") at all times related to this action was/is the Deputy Director of Religious Programming Division located in Huntsville, Texas, charged and tasked with ensuring, promoting, and protecting the religious rights and practices of all religions, to include the equal and fair treatments of religion.

9.   Warden A. Martinez ("Warden Martinez") is the Deputy Warden on the Hughes Unit, responsible for the daily operations of the general population, food service, and enforcements of policy and directives, to include religious services and chapel services. Warden Martinez is currently the highest ranking defendant named in this suit and located at the Hughes Unit after the departure of Senior Warden and defendant Bruce Armstrong.

10.   Defendant Major Henry ("Major Henry") at all times related to this action was/is the Food Service Manager responsible for the implementation and following of TDCJ food service policies, and performance to include ensuring that all medical diet plans are followed and enforced. She is responsible for the contents, quantity, and quality of the food served on the Hughes Unit.

11.   Defendant Bruce Armstrong ("Warden Armstrong") at all times relevant to this action was the Senior Warden at the Hughes Unit. He was responsible for the overall supervision and operations of the Hughes unit to include enforcement of, and supervision of staff and policy, as well as protecting and caring for plaintiff and all other inmates at the Hughes Unit.

12.   Defendant Shumaker ("Captain Shumaker") at all times related and relevant to this action was/is the supervising manager of the

Hughes Unit, to include enforcing policy and following medical requirements related to clothing.

13.    At all times relevant to this action, all defendants acted under color of state law, and is hereby sued in their individual capacities for monetary damages, official capacities for injunctive relief, jointly and severally, for those acts and omissions now described fully below and throughout.

## IV.    STATEMENT OF FACTS
### CLAIMS

### A. FIRST AMENDMENT, RLUIPA, and ESTABLISHMENT CLAUSE VIOLATIONS

14.    TDCJ and the Hughes Unit promotes and operates a pervasively christian supported, influenced, and favored culture. There is a substantial and unfair distribution of state funds designated for and taken from the state budgets for the christian programming and essential indocrination of the christian faith, that indiginous faiths do not receive, if any at all.

15.    Inmates whom are christian and participate in the christian faith receive numerous privileges, programs, and advantages that are not equally provided to other faith groups such as Native American Faith Member's like plaintiff. Whatsmore, christian idocrinations happens on a daily basis throughout the Hughes Unit, TDCJ, and even on the inmate tablets issued by Securus.

16.    For more than Three (3) Year's on the Hughes Unit, and more than Five (5) year's on other TDCJ Native American Units, plaintiff has held a leadership role in the Native American Faith Group. He

is currently the Speaking Elder for the Hughes Unit Native American Faith Group, elected by the entire inmate Native Member's as well as the TDCJ Native American Chaplain, Raul Androtti.

17. Plaintiff has addressed the discriminatory practices of the TDCJ Religious Programming Division, the Hughes Unit, as well as administration and staffing in numerous grievances, letter's, and appeals.

18. Plaintiff has fully exhausted the discrimination, disparate treatments of, and the complete indifferences to the Native American Faith Group to include:

- Attendance Group Numbers that limit Natives to 100 participants while christian members are not held to the same numbers requirement/limits, nor are other faith groups;

- Christian Field Ministers/Mentors while Native Faith Group is not allowed the same for their members;

- Chapel workers representing the Native American Faith Group where none have ever been assigned;

- Denial of Community Sacred/Holiday meals while other faith groups receive their own, in celebration of the exact same observances and traditions;

- Celebration of Christmas instead of Native American Month in November, while on a Native American Designated Unit and long before Christmas;

- Special Housing and Living Condition/Privileges for Christian members;

- Denials of Native Leadership/Counsel Meetings while christian and other faith groups are allowed to continue their own religious meetings, classes, programming;

- Denial of and refusal to provide Sacred items for the Native American Ceremonies (Candle, Red Hankerchief, Holiday Meals);

- Forced christian indocrination in the living areas, and throughout TDCJ and the Hughes Unit;

- Denial of drumming practice while allowing christian band practices to be held on the same day and time;

> •Being limited to only 90 minutes of Native American
> Service per week, on a Native American Designated
> Unit, while christian related programming and services
> total to nearly 200x that time amount.
>
> •etc.

19.   Numerous times, christian volunteers, inmate christian field ministers, etc., have entered plaintiff's living area, and promoted christian indocrination by commandeering the television and turning it either off, or to a channel promoting christian indocriniation/material, speaking loudly via a riot control speaker provided by the Chapel, and forced their christian indocrination onto every single inmate in that section.

20.   Plaintiff has been told by the christian volunteers and the inmate field ministers/staff that "Without Jesus you are going to hell, and are spiritually dead", and has been repeatedly invited to change his religion to christian in order to "be saved."  More so, he has been awakened early in the mornings and late at night by christian filed ministers and volunteers who have entered the living areas and used a stereo system to blast christian rap music as well as other christian music. They hold silence and pray out loud to jesus, asking that he "forgive those who do not believe and who do not follow him", etc.

21.   The christian indocrination on the Hughes Unit, supports and promoted by TDCJ, is a violation of plaintiff's First Amendment rights. TDCJ's "Christian Crusade" policy in itself is a violation of the First Amendment.

22.   Denying Native American's and plaintiff from wearing his

Sacred Medicine Bag and Feathers at all times, while allowing the
Muslim and Jewish Communities to wear their religious headgear and
other religious items, prevents and interferes with plaintiff's
right to practice his faith, and is discrimination and unequal
treatment of religions.

23.   Plaintiff met with the Assistant Regional Director on the
Hughes Unit related to the discrimination of the Native American
Faith Group, as well as denial of his request to attend and be also
certified as a Native American Field Minister like the christian
faith, she advised him to "change your faith to christian so you
can attend the christian field minister program, eat the fish and
spit out the bones after, then go back to Native American after."

24.   Plaintiff informed the Asst. Regional Director that this would
violate his religion and religious beliefs to be indocrinated with
a christian faith content, as does the christian content in the
unit's veteran pod's, and ALL programming on the Hughes Unit and in
TDCJ, to which she replied, "If you want the same privileges you
have to make the faith change necessary to achieve it. Field Minister
School is only for Christian's not Native American's who are not
Christian's."

25. Currently, plaintiff as conducted all Native American Faith
Ceremonies, Practices, Teachings, as well as served the communities
spiritual needs for three year's on the Hughes Unit, more than five
year's in TDCJ, all under extreme prejudice, restriction, unfair
treatment, and discriminations that prevent the practices of and
the accomodation of his faith, etc.

B.    DENIAL OF AND FAILURE TO ACCOMODATE PLAINTIFF'S MEDICAL NEEDS.

26.    Plaintiff suffers from chronic shoulder pain related to
arthritis and previous shoulder surgeries to repair torn rotary
cuffs on both shoulder's. He was diagnosed by TDCJ medical staff
and prescribed a medical shirt to accomodate the injuries and to
eliminate the pain of pulling a shirt over his head.

27.    Plaintiff also suffers from chronic arthritis in both of his
hands from prior surgical repairs and noted by his scars and history
retained in the TDCJ medical system. Plaintiff was prescribed a
medical shirt consisting of a zipper to eliminate his need to tie
or button, which causes immense pain and swelling. In fact, plaintiff's
medical prescription specifically names and requires a "Zipper Medical
Shirt" to be untucked.

28.    Defendants Shumaker and Armstrong, made the decision to turn
the medical zipped shirts into tied shirts consisting of more than
six (6) large strings. This caused immediate and observed swelling
and pain in plaintiff's hands in which he sought treatment.

29.    Plaintiff filed grievance since this decision was made without
consulting plaintiff's medical needs, nor those of other inmates,
and because "the zipper shirts are too popular so we changed them",
as the grievance response detailed.

30.    Plaintiff inquired directly to defendant Shumaker whom told
him that "TDCJ changed the shirts state wide, and besides, I can
change what I want even if they didn't. You don't need a zipper."

31.    Defendant Armstrong defended Shumaker's decision as well as

his reasoning with the exception of "TDCJ didn't make any changes, I made them here with Captain Shumaker so deal with it."

32. Plaintiff contacted TDCJ with the assistance of a friend and was informed that TDCJ had not changed from the zipper shirts and that medically required inmates would still be issued zipper shirts.

33.  Plaintiff observed that other inmates returning from medical chain were issued and provided zipper shirts, and that defendant Shumaker was confiscating them upon return from Huntsville and UTMB Galveston in spite of them being issued by TDCJ as required.

34.  Plaintiff still suffers from swollen hands, painfully every day and due to the having to tie these large and numerous strings multiple times per day, which the defendants are deliberately indifferent to.

35.  Plaintiff was issued a medical mattress due to a previous spinal surgery that leaves him in pain and with numbness, etc.

36.  During a recent lockdown, plaintiff's medical mattress was confiscated and destroyed, without confiscation paperwork, and in spite of plaintiff showing his medical pass to have the mattress.

37.  For the past three weeks, and still, plaintiff has returned to medical on four occasions attempting to obtain another medical matress, in all times he was denied by medical staff and because "Warden Martinez told us not to hand out any more medical supplies until after lcokdown is over" according to Nurse Jacobs and other's to include a provider plaintiff saw on June 28, 2023.

38.    Plaintiff has been forced to sleep on a bare steel frame
and without a medical mattress or any other mattress, which has
caused immeasurable pain and swelling of his back, hips, and legs,
as well as many sleepless nights which have caused him chronic and
painful migraine headaches which he normally does not suffer. All
for the past three weeks totaling about 23 days currently. Nobody
cares.

C.   INSUFFICIENT AND INADEQUATE FOOD IN VIOLATION OF PLAINTIFF'S
     MEDICAL REQUIREMENTS.

39.    Plaintiff was prescribed the "Diet for Health" by a provider
many year's ago and related to his chronic health issues and weight
control. For many year's the "diet" menu has been fairly good and
consistent throughout TDCJ since the mandate for it is strictly
detailed and enforced per policy and directive. Even on the Hughes
Unit, in the past, the same was true.

40.    About two year's ago, Major Henry was hired to operate as
the Food Service Major in spite of holding absolutely no qualifications
to do so under TDCJ's own requirements and policies, and in spite
of having never held the position of Captain, leap frogging to
the Major position.

41.    Immediately, the food became so inedible that plaintiff could
not even bare to eat it, and all "diet" requirements were totally
thrown out the window.

42.    Plaintiff is required to have milk, fruit, vegetables, and

11.

a strict meal menu that "cannot be changed or altered" without TDCJ approval and notice. But, Major Henry refuses to follow or adhere to the "diet" menu which has brought the unit thousands of written and filed grievances that have gone unchecked in totality, to now include plaintiff's own.

43. Plaintiff has suffered from uncontrollable heartburn and dietary complications related to the disobeyance of the "diet" menu provided by TDCJ, as well as weight gains which have caused immense negative health indications such as swelling in the ankles and feet, and immense acid reflux.

44. Plaintiff is not served milk, rarely if ever recieves the daily fruit requirement, and is never served the "diet" menu as promoted on TDCJ's website as well as provided at TDCJ Unit's throughout TDCJ to include Region 1 Unit's, etc. Only when TDCJ officials arrive for inspection, does defendant Henry prepare the required "diet" meals, etc.

45. Diet meals are supposed to be issued in a separate dining area, which is Chow Hall 7 here on the Hughes Unit. But, this has not been done in months, and plaintiff has been required to eat the regular menu that they simply call "diet" because they do not want to prepare the "diet" menu/meal.

46. During numerous past lockdowns, to include the most recent, as well at at various times, plaintiff has actually lost large amounts of weight and experienced immense hunger associated pains

because defendant Henry refuses to issue the correct amount of caloric intake. Last night, in fact, plaintiff received only a 150 calorie box of cereal, and a peanut butter sandwich of 100 calories. Far from the 700 calories required for breakfast by TDCJ and the health agencies, etc. For lunch today, as plaintiff types this lawsuit, he was issued a peanut butter sandwich, and a small bag of raisins, far from the 800 calories required by TDCJ policy.

47. The failure of defendant Henry to follow and provide the nutrients and caloric intake of the "diet" menu caused plaintiff to lose more than 12 pounds in the past 2.5 weeks and experience side effects of restricted diet and hunger such as dizziness, stomach and limb cramping, etc., painful sensations. Plaintiff was weighed on on 6/28/23.


D.    CRITICAL LACK OF STAFFING


48. TDCJ to include the Hughes Unit, has/is experiencing not only a lack of staffing, but a critical one that effects not only plaintiff, but all inmates throughout the TDCJ system, as well as the citizen's of Texas and further.

49. In May of 2022, an inmate ("Lopez") escaped from the Hughes Unit because of inadequate staffing which caused ineffective and failures related to security. Lopez killed an innocent family of five before being killed himself by law enforcement.

50.    Unknown to this Court, and the citizen's of Texas, is that there have been three additional escape attempts on the Hughes Unit, as well as nearly successful escape attempts. On other units, escapes have been successful and citizen's faced immense dangers that TDCJ kept hidden and secreted to cover up the critical lack of staff.

51.    On any given day, as has been reported on most every unit in Texas to include the Hughes Unit, plaintiff can walk across the unit and not see a single staff member. Most often, there is only a single officer working the building to supervise and protect 450 inmates. Only a desk boss, and without any rovers.

52.    Food service, recreation, programming, visitation, education, religious services, and the overall operations of the unit are stopped and suspended due to staffing crisis and shortage. Inmates grow more bold in the face of nobody there to stop them.

53.    Sexual assaults, physical assaults, drugs and cellphones, escape attempts, all happen with impugnity on the absence of any let alone enough staff to control and thwart it.

54.    Hughes Unit has been the media focus of officer's arrested for introducing contraband, operating sexual rings, emergency runs to the hospital for inmates overdosing by the hundreds, deaths of inmates via suicide and overdose, etc.,etc.,.

55.    Plaintiff is forced to live amongst dangerous and life threatening K2 smoke, inmates enraged and overtaken by drug use,

vomiting, throwing feces and urine riddled with HIV, Hepatitis, and other diseases that have gotten on plaintiff and exposed him to life threatening disease, etc. All without a single officer in the vacinity.

56.     To make up for the lack of staffing, defendant Martinez implemented policy to allow MAXIMUM SECURITY inmates housed on the MAXIMUM SECURITY building to wander around the building and unit, as "worker's" to assist available staff. This backfired on June 15th, 2023, when an inmate worker on MAXIMUM SECURITY was able to slip away, climb two fences, and nearly escape before he was detected and secured.

57.     Defendant Martinez, as a Warden, violated TDCJ security policy and mandates allowing MAXIMUM SECURITY as well as CLOSE CUSTODY inmates, to work and move around the buildings and unit, freely and without staff escorts, etc. All to make up for the critical lack of staffing that places plaintiff in harms way of life and health, as well as the public at large.

58.     Defendant Martinez also introduced policy/IOC that allows inmates to leave their cell door's open all day, against TDCJ security policy and mandate, which poses an immense risk to the safety and operations of female staff, and inmates to include the plaintiff. Open cells are used to do drugs, engage in homosexual sexual activities, and for violent fights and aggressions.

59. Plaintiff has been hit by a drug enraged inmate swinging a broom around the room, covered in blood, vomit, feces, and urine,

by inmates acting out in the absence of staffing to thwart or
stop the actions. The Hughes Unit has been and remains out of
control and due to the critical lack of security presence in all
areas of operations.

## D.   EXPOSURE TO EXCESSIVE HEAT CONDITIONS

56.   Plaintiff suffers from chronic asthma/copd that makes him
especially sensitive to heat, let alone excessive heat conditions.
Plaintiff has a medical restriction preventing him from being
exposed to extreme heat conditions as listed on  his medical record.

57.   TDCJ has implemented AD-10.64 to eleviate heat exposure in
response to prior lawsuits and decisions of federal courts and the
Fifth Circuit Court of Appeals, etc.

58.   Due to the excessive staffing shortages, as well as a lack
of enforcement and supervision, AD-10.64 fails miserably to have
any relief or respite to the life threatening heat. Respite is not
even provided, ice is never filled enough and runs out within a few
minutes time every 12 hours when filled, cold water showers are
rarely cold if even working at all, etc. Plaintiff has gone HOURS
without ever having seen a staff to request heat related measures
from.

59.     Administration has threatened to place plaintiff in a restricted housing "cool bed" if he complains about the heat, which is High Security lockup building that eliminates liberties and freedoms such as attendance and access to religious services at the chapel/Native American Faith Activities where he serves as the leader, outside recreation, chow hall dining, programming, etc. All-in-All, administration has threatened to strip plaintiff of his earned liberties should he conplain about the excessive heat that threatens his life and causes immense health related effects such as hardships in breathing, skin rashes and irritations, cramps and dizziness, etc. Asthma/COPD mixed with extreme heat, is a recipe for disaster and even death as many have already died across TDCJ from the heat.

60.     The average summer air heat index on the Hughes Unit has been above 100 degrees the past three year's and violates plaintiff's right to humane treatments. Plaintiff is Native American, and TDCJ does not offer a Native American Unit with Air Conditioning, only a medical unit as well as a female unit right next to the Hughes Unit. Plaintiff has requested an Air Conditioned Unit for Native American Older Inmates (Over 50) to instituted at the Hughes Unit a Native American Designated Unit, without success. There are appox 15,000 Native American Inmates in TDCJ, with 600 at the Hughes Unit, 50% over the age of 50 and with health issues making them critically sensitive to excessive heat much like plaintiff.

61.     For Seven year's, plaintiff has been complaining of and suffering from heat related/medical related side effects of heat, on five separate units, supported by medical records.

E.      CONFISCATION AND DESTRUCTION OF PROTECTED PROPERTY.

62.    TDCJ has a policy that any and all confiscated property shall be accompanied by issued Prop 7 confiscation papers, and by Prop 8 property papers identifying where the property is.

63.    TDCJ also has a Security Mandate SM:03.02 that requires staff to handle searches with care and professionalism, making certain not to unduly disorganize, or destroy inmate property.

64.    In spite of TDCJ policy, there exists a "custom" on all prison units across TDCJ to search an inmates property, to include plaintiff's, by throwing it around without care and onto the floor in a pile. This includes legal materials, books, and all property. Plaintiff's property has been destroyed in total, legal records and documents purchased at high expense completely damaged and destroyed, some even thrown away.

65.    Plaintiff's property was obtained via legal commissary purchases or having been sent in via an approved vendor at either plaintiff's or his contacts expenses. Yet staff are abusive in nature and destroy and toss about the propety without a care in the world, costing plaintiff hundreds if not thousands of dollar's to himself and his family/friend's.

66.    On 6/14/23, the same occurred to include plaintiff's Sacred Medicine Bag and Feather which were dumped all over the floor and tossed in the trash, the feather broken, a gift from the Native

American Chaplain in Huntsville (Raul Androtti), and some of plaintiff's expensive legal books confiscated without reason or confiscation paperwork.

66.    Defendants in total, allow and participate in the violation of clearly written policy related to cell inspections and security inspections, let alone federal court decisions related to the same. There is no "peneological justification" to plummage through an inmates property, tossing and throwing at will, destroying and damaging the property plaintiff was/is authorized to purchase and possess. On 6/14/23, plaintiff's $365 dollar typewriter was also damaged during the search, the plastic parts completely broken unnecessarily due to being mishandled, etc.

67.    Upon entering the cell after the search, plaintiff's property was scattered all over the cell, disorganized, mingled with another inmates property, wet, torn, and broken. You couldn't even see the floor in the cell. Plaintiff's medical provided mattress was cut into pieces with a knife or scissor's, and tossed into the trash.


F.    DENIAL OF CORRESPONDENCE AND WITHOUT RIGHT TO APPEAL.


68.    The Hughes Unit along with all TDCJ units, have been denying legal communications on the grounds that "there is a suspicious substance on it". This includes materials sent by the Church, all approved vendor's, and even this Court on two instances.

69.    When a denial occurs, we aren't allowed to appeal it.

70.    After denial of appeal, the communication's and property
are destroyed without further notice. All of which are because of
a "suspicious" but not illegal or allegedly unallowed substance
likely caused by routine mail sorting or carrying, etc.

71.    Numerous times in the past, as well as as recent as 6/23/23,
(grievance filed on that incident as well) mail staff denied a new
copy of a book delivered by an approved vendor, written by an Author
associated with the Innnocence Project and about the plaintiff's
wrongful conviction and innocence as she determined after her own
investigation titled, "Wheels of Injustice: The Raymond Lumsden
Story."

72.    In all instances, plaintiff has not been allowed to see the
alleged "suspicious" subtances, file appeal, etc. There is no
policy or law against a "suspicious" substance, only an illegal
substance determined by available testing measures, etc. All mail,
according to the United States Postal Department, has some sort of
substance on it from normal operations, and delivery, etc. None of
which, is suspicious.

73.    Often it is weeks before mail is finally delivered to plaintiff
due to staff shortages, and the suspicious substance may be from its
sitting in the mailroom for WEEKS at a time, literally.

G.   DELIBERATE INDIFFERENCE

74.   All of the defendant's, have been made aware of the cited violation's to plaintiff's constitutional rights and in numerous instances. They were all aware of the violation's as well as had/ have the control and authority to rectify and address the issues, which they have chosen not to do.

75.   Largely because this Court has been historically passive in the failures and abuses of TDCJ as well as the Hughes Unit, and has unduly scrutinized and criticized inmate lawsuits much as expected with this one, TDCJ staff and Unit staff at the Hughes Unit have been allowed to advance its' "Woke" agenda and impede upon and continue to operate in violation of federal precedent on the exact same matters. Without this Court's oversight and Stare Decisis, it only continues and gets worse.

V.   CLAIMS FOR RELIEF

Count One:   Violation of the Establishment Clause, RLUIPA, and
             the First Amendment.

74.   Paragraphs 14 through 38 are incorporated herein as if fully set forth herein.

21.

75.     The Establishment Clause of the First Amendment of the
Constitution of the United States provides, "Congress shall make
no laws respecting an establishment of religion."  The Establishment
Clause applies to and with full force and effect to the acts of
State and local government entities and officials pursuant to the
Due Process Clause of the Fourteenth Amendment of the Constitution.

76.     By sponsoring and funding with more vigor and discrimination
the christian faith and its programs, events, practices, the named
defendants have violated  and continue to violate the Establishment
Clause of the Fourteenth Amendment of the U.S. Constitutions, to
include as described below:

77.     The State's and defendants sponsoships and financing of more
christian faith than other indiginous faiths, to include the christian
field minister program located at the Memorial Unit, has the primary
effect of advancing that religion. It results in governmental
indocrination of the christian faith. State funds are being used
for the christian faith pervasilevly so, and the funds are specific
for christian faith events and programming.

78.     The defendant's sponsorships and support for christian only
type programs and initiatives such as the field minister program,
provides inmates with the incentive to subject themselves to nothing
more than christian religion, and coerces them to do so. Plaintiff
and other's, must choose between submission to indocrination of the
christian faith in which he does not agree, or foregoing numerous
privileges offered and afforded only to participants of christian
faith.

79.     By defendant's denying plaintiff the equal treatments, privileges, rights, and accomodations as a Native American Faith Member and Leader as provided to the christian and other faith groups, they have violated the First Amendment of the Constitution, as well as RLUIPA.

Count Two:   Cruel and Unusual Punishment by Medical Denial and Treatment.

80.     Paragraphs 26-38 are incorporated herein as if fully set forth herein.

81.     The defendant's knowledge of, and deliberate indifferences to plaintiff's medical requirements, pain and suffering related to denials of treatments and accomodations, violates the Eighth Amendment of the United States Constitution.

Count Three: Denial of Adequate and Sufficient Food related to Plaintiff's Medical Needs.

82.     Paragraphs 39-47 are incorporated herein as if fully set forth herein.

83.   Defendant's denial of adequate and sufficiently based food as required by plaintiff's medical requirements, and TDCJ policy, violates the Eighth Amendment of the United States Constitution.

**Count Four:   The critical lack of staffing violates the Eighth Amendment of the Constitution.**

84.   Paragraphs 48-69 are incorporated herein as if fully set forth herein.

85.   Defendant's failure to provide adequate staffing levels and supervision, as well as disobeying existing security related policy and directives, causes a dangerous existence for plaintiff as well as society at large, and violates the Eighth Amendment of the U.S. Constitution.

**Count Five: Exposure to Extreme Heat**

86.   Paragraphs 56-61 are incorporated herein as if fully set forth herein.

87.    Defendant's continued exposing plaintiff to excessive heat conditions that exasperate his medical conditions of Asthma and COPD as well as his Hypogonadism, placing his health and life in danger and exposing him to physical pain and trauma of cramping, dehydration, dizziness, and etc., violate the Eighth Amendment of the U.S. Constitution. TDCJ has medically restricted plaintiff from exposure to excessive heat, but then does so without regard.

88.    Plaintiff is over the age of 50, medically challenged, and excessive heat is cruel and unusual in the instant. TDCJ has made specific instruction not to expose plaintiff to excessive heat but continues to do so without allowing plaintiff to even purchase his own portable cooling unit as available to other prison's, etc.

                    Count Six:   The Confiscation and Destruction
                                 Plaintiff's Property.


89.    Paragraphs 62-67 are incorporated herein as if fully set forth herein.


90.    The confiscation and destruction of plaintiff's property, and without required paperwork under TDCJ policy, violates the Due Process and Property Rights of the U.S. Constitution.




                    Count Seven:   Denial of Correspondence and the
                                   Right to Appeal.


91.    Paragraphs 68-73 are incorporated herein as if set forth herein.

92.    Defendants denials of plaintiff's protected correspondence rights, and without allowing appeal of that denial, violates the First Amendment of the U.S. Constitution.

## Count Eight:  Deliberate Indifference.

93.    Paragraphs 74-75 are incorporated herein as set forth herein.

94.    Defendant's should have been, and were made aware of the violations cited throughout this complaint, and refused to take any action(s) to rectify or eliminate them. They were and remain in absolute indifference to clearly established and posted TDCJ policy and laws related to them. This violates the Fourteenth and Eighth Amendments of the U.S. Constitution.

## VI.   PRAYER FOR RELIEF

95.    Paragraphs 1-75 are incorporated herein as if fully set forth herein.

### Injunction

96.    Plaintiff has no other adequate remedy of law. WHEREFORE, plaintiffs respectfully request a permanant injunction prohibiting the continued conducts of the defendant's. In the alternative, or in the addition, any that this Court may deem appropriate or just.

## Nominal Damages

97.    Having his Constitutional Rights violated by the defendant's, plaintiff respectfully requests nominal damages against all of the defendants.

## Compensatory Damages

98.    Plaintiff hereby requests compensatory damages of $30,000 dollar's against all defendant's individually, and cumulatively.

## Other Relief Requested

99.    Plaintiff further requests any other and additional relief this Court feels or deems just and proper.

## VII.   VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Raymond E. Lumsden, hereby declare under the penalty or perjury under the laws of the United States of America, that I have read the foregoing and that it is true and correct to the best of my knowledge and belief.

Dated this 3rd day of July, 2023.

Raymond E. Lumsden #2109472
3201 FM 929
Hughes Unit
Gatesville, Texas, 76597

Pro se.

03, July, 2023


Clerk, U.S. District Court
Western District of Texas
800 Franklin Ave, RM. 380
Waco, Texas, 76701


RE:  Complaint / IFP Application



Dear Clerk:



Enclosed, please find my Complaint and Application to Proceed In Forma Pauperis therein. The 6 month trust fund statement will be sent in a separate envelope, arriving within a few days of this package due to a delay in receiving it from the law library.

I have done everything to avoid litigation, but can no longer accept TDCJ's "Woke" agenda that funds millions of tax payer dollar's every year for Transgender Hormone Therapy, and "Gender Correctional Care," yet denies my right to religious holidays, events, and medical care necessary to eliminate my documented medical needs.....based on cost.

Men can walk around TDCJ with full breasts, makeup, and looking like a woman, all funded by TDCJ, yet I cannot even receive what is medically necessary to live pain free, etc., and to celebrate the Creator under my religious preference, etc.

Judge Albright hates inmate lawsuits, I know that, and will likely and quickly dismiss mine, now. Still, I cannot accept TDCJ's "Woke" and liberal agenda, nor can I allow myself to live denied of the simple decencies of a human being, even while in prison. This is America, not North Korea, this is Texas and not California!!! Pain free living, humane treatment, and the right to practice my faith equally and fully, is all that I seek.

I apologize for this lawsuit, it was necessary.

Respectfully,

Raymond E. Lumsden #2109472
Hughes Unit
3201 FM 929
Gatesville, Texas, 76597

P.S.   I pray for a return copy of **the enclosed,** this
one time, due to inability to obtain copies here,
and for my records.

L. Lumsden # 2109472
Hughes Unit
3201 FM 929
Gatesville, Texas
76597

FRI 07 JUL 2023 PM

Clerk, U.S. District Court
Western District of Texas
800 Franklin Ave, # 380
Waco, Texas
76701

RECEIVED

JUL 10 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY CLERK

Legal Mail